IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAMONT J. MARSHAL,                    )
                                      )  Civil Action No. 06 - 215J
                                      )
        Plaintiff,                    )  Judge Kim R. Gibson /
                                      )  Magistrate Judge Lisa Pupo
v.                                    )  Lenihan
                                      )
                                      )  Doc. No. 52
SAM LOMBARD, Warden; JAMES            )
MCCLOSKEY, Deputy Warden; DR.         )
CATHY MOYER;  MICHELLE WORMUTH,       )
LPN; HONORABLE FREDRIC J.             )
AMMERMAN, Chairman, Clearfield        )
County Prison Board; MARK             )
MCCRACKEN, County Commissioner;       )
MIKE LYTLE, County Commissioner;      )
REX READ, County Commissioner;        )
WILLIAM A. SHAW, JR., District        )
Attorney; DON M. MCCLUSICK,           )
Director of Probation; CHESTER        )
HAWKINS, Sheriff;  and CLAUDIA        )
READ, Controller,                     )

        Defendants.


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

        For  the  reasons  that  follow,  it  is  respectfully

recommended  that  the  Motion  for  Summary  Judgment  filed  by

Defendants R. Read, Shaw, McClusick, Hawkins, C. Read, Lombardo,

McCloskey, Wormuth, Ammerman, McCracken, and Lytle (doc. no. 52) be

granted as to all claims **EXCEPT** as to Plaintiff's claims regarding

the deduction of medical fees from his inmate account; because it

does not appear that Defendants Warmuth and McCloskey were involved

the decision to impose Plaintiff's medical costs, these defendants should be dismissed.

II.     **REPORT**

Plaintiff, Lamont J. Marshall, an inmate previously incarcerated at the Clearfield County Prison (CCP), commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. The remaining Defendants include the following:  Sam Lombard, Warden of CCP; James McCloskey, Deputy Warden; Michelle Wormuth, LPN; Honorable Frederic J. Ammerman, Chairman of the Clearfield County Prison Board (CCPB); Mark McCracken, Commissioner - CCPB; Mike Lyle, Commissioner of CCPB; Rex Read, Commissioner - CCPB, William A. Shaw, Jr., District Attorney - CCPB; Don McClusik, Director of Probation - CCPB; Chester Hawkins, Sheriff - CCPB and Claudia Read, Controller - CCPB.  Plaintiff claims that Defendants have violated his rights as protected by the Eighth and Fourteenth Amendments of the United States Constitution by denying him adequate medical treatment, taking funds out of his prison account without due process of law, and failing to protect him from an attack by another inmate.

### A. Standard of Review

Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. Proc. 56 (doc. no. 52).  Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ". . . the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a <u>genuine issue for trial</u> . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). Stated another way, "[w]here the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, at 587. The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Brown</u>

v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. Proc. 56 (e); Celotex Corp., 477 U.S. at 324; J.F. Feeser,Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

## B. Plaintiff's Allegations

Plaintiff claims that on March 14, 2006, he was processed into the CCP on charges of possession of marijuana. After being on H block, Plaintiff began to feel uncomfortable with certain inmates and submitted four request slips to CCP staff requesting to be moved to another housing block. Plaintiff's request slips went unanswered. On April 11, 2006, Plaintiff was assaulted by inmate Colby Taylor who came into his cell and smashed Plaintiff's head against the bars. Plaintiff was placed on emergency life support and taken to the Clearfield County Hospital where he received fifty staples in his head to close the lacerations. As a result of the assault, Taylor received a misconduct and was charged with criminal assault. Plaintiff was not charged with any wrongdoing as a result

of this incident but was required to pay fifty percent of his medical costs.

As a result of the assault, Plaintiff experienced severe headaches, dizziness, memory loss, impaired thinking and blackouts. To this end, he wrote the medical department seeking follow-up treatment and to review his emergency room (ER) report. Dr. Cathy Moyer prescribed Ibuprofen and LPN Warman told Plaintiff that the medical department had not received his ER Report and were waiting to review it to determine the extent of Plaintiff's injuries.

On April 15, 2006, Plaintiff filed a grievance concerning the lack of follow-up medical care. His grievance was held to be without merit by grievance coordinator Deputy Warden McCleskey. On April 24, 2006, Plaintiff filed another grievance stating that the medical department was using the lack of availability of the ER Report to deny him adequate medical treatment. This grievance was not acknowledged.

On May 2, 2006, Plaintiff was released from the CCP on bail. On June 13, 2006, he was arrested on new charges and again placed in the CCP. When Plaintiff discovered that his inmate account was being charged for his medical expenses, he filed a grievance claiming that there was no basis to charge him because he was not at fault. This grievance was denied and Plaintiff appealed to the Clearfield County Prison Board (CCPB).

Still experiencing problems, Plaintiff sought medical treatment at CCP. On July 19, 2006, Plaintiff met with Dr Moyer and LPN Wormuth. The ER report was faxed to CCP and Dr. Moyer informed Plaintiff that the ER Report revealed evidence of brain swelling, brain bleeding and strokes. Dr. Moyer prescribed Neurontin, and anti-seizure medication when she determined that Plaintiff's blackouts were actually seizures. Allegedly, she also recommended a follow-up MRI and an examination with a neurologist.

On July 26, 2006, Plaintiff filed a motion with the Clearfield County Court of Common Pleas requesting the recommended medical treatment. On August 7, 2006, the Honorable Frederic Ammerman denied Plaintiff's motion.

On July 29, 2006, Plaintiff wrote letters to Judge Ammerman and Mark McCracken as members of the CCPB requesting the recommended medical treatment and informing them that he should not be responsible for the medical costs. On August 10, 2006, the CCPB met and, in a three sentence memo through Warden Lombard, the CCPB directed Plaintiff to utilize the CCP medical department as per the inmate handbook. The CCPB refused to acknowledge Plaintiff's grievance appeals regarding his medical treatment and the confiscation of money from his inmate account.

## C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42

U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976).  Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions.  Rode, 845 F.2d at 1207. *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

## D. Pre-trial Detainee Standard

As a pre-trial detainee, Plaintiff's claims invoke the protections of the Fourteenth Amendment. <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process, we think that the proper inquiry is whether those conditions amount to punishment prior to an adjudication of guilt in accordance with law. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Id*. at 535 (citations omitted).

In <u>Bell</u>, the Supreme Court announced the following test for determining whether the conditions of confinement for pre-trial detainees violated the Fourteenth Amendment.

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the

> governmental action is punishment that may not
> constitutionally be inflicted upon detainees
> qua detainees. Courts must be mindful that
> these inquiries spring from constitutional
> requirements and that judicial answers to them
> must reflect that fact rather than a court's
> idea of how best to operate a detention
> facility.

Bell v. Wolfish, 441 U.S. at 538-539 (internal quotations and citations omitted).

The Court of Appeals for the Third Circuit reviewed this standard in Hubbard v. Taylor, 399 F.3d 150, 158-159 (3d Cir. 2005). In Hubbard, the Court of Appeals acknowledged that Bell required the courts to engage in a two-step analysis:

> we must ask, first, whether any legitimate
> purposes are served by these conditions, and
> second, whether these conditions are
> rationally related to these purposes. In
> assessing whether the conditions are
> reasonably related to the assigned purposes,
> we must further inquire as to whether these
> conditions cause inmates to endure such
> genuine privations and hardship over an
> extended period of time, that the adverse
> conditions become excessive in relation to the
> purposes assigned to them. Our inquiry into
> whether given conditions constitute
> "punishment" must therefore consider the
> totality of circumstances within an
> institution.

Hubbard, 399 F.3d at 159 (internal quotations and citations omitted).

1. Medical Treatment

The record evidence shows the following. Sometime on November 30, 2005, Plaintiff was involved in an assault that

required treatment at the Dubois Regional Medical Treatment Center (DRMC) (doc. no. 53-3, p.2). At that time, he underwent a CT scan of his head, which revealed no evidence of hematoma, mass or cerebral edema; however, moderate soft tissue swelling was noted overlying the right frontal bone.

Plaintiff was committed to the Clearfield County Jail (CCJ) on March 14, 2006 (doc. no. 53-5, p.2). On April 11, 2006, Plaintiff was involved in a physical altercation with inmate Colby Taylor. Review of the surveillance video tape at the time of the incident revealed that inmates Taylor and Lamont were involved in an argument over the television set (doc. no. 53-3, p. 13). Several minutes after the argument, Taylor came out if his cell and went after Plaintiff and assaulted him. Plaintiff was seen falling to the ground and inmate Taylor going back into his cell. Emergency aid was given to Plaintiff and an ambulance was called. Plaintiff immediately was transported to the Clearfield County Hospital for treatment where he received fifty staples and four subcutaneous stitches for lacerations to his scalp (doc. no. 53-4, pp. 40-41) and treatment for injury to his right arm. A CT scan was performed noting a large hematoma in the scalp but no acute intra cranial abnormality was seen (doc. no. 53-4, p. 45). Plaintiff was released back to the jail in satisfactory condition with no instructions for an MRI or evaluation by neurologist (doc. no. 53-4, p. 43). On April 19, 2006, Plaintiff's staples were

removed and he was given antibiotic cream, Ibuprofen and anti-seizure medication (doc. no. 53-4, p. 2). Plaintiff was seen again by medical for follow-up treatment on April 26, 2006 where he received another prescription for Ibuprofen (*id.*).

On May 2, 2006, Plaintiff was released from the CCP on bail (doc. no. 53-5, p. 37). On that same date, Warden Lombardo issued a Memorandum to inmates Taylor and Marshall that each were responsible for half of Plaintiff's medical bills, which totaled $2439.90 (doc. no. 53-5, p. 19).

On May 4, 2006, Plaintiff went to the DRMC for further treatment for his headaches and dizziness (doc. no. 53-4, pp. 50-56). Another CT scan was performed and no evidence of acute intra cranial abnormality was seen. Although mild tissue swelling was noted, there was no significant change when compared to the previous CT scan done on November 30, 2005 (doc. no. 53-4, p.55).

On June 6, 2006, Plaintiff was recommitted to the CCJ on new charges of assault, disorderly conduct and harassment (doc. no. 53-5, p.40). On June 15, 2008, Plaintiff filed a grievance concerning the deduction of his medical expenses as not authorized under the inmate handbook (doc. no. 53-5, p. 20). On July 19, 2006, Plaintiff was seen by PA Moyer for complaints of headaches, neck pain, and short term memory loss. He was diagnosed with post concussion syndrome and given Neurontin, an anti-seizure medication. Although Plaintiff alleges that PA Moyer told him that

he should have an MRI and a consult with a neurologist, this is not documented in his medical records (doc. no. 53-4, p. 3).

On July 27, 2006, Petitioner filed a Motion for Medical Attention in the Court of Common Pleas of Clearfield County at his criminal docket no. CP-17-CR-336-2206 (doc. no. 53-8, pp. 4-7). In this motion, he complains that the CCP medical department told him that he was suffering from post-concussion syndrome without having the benefit of his emergency room medical reports. He further alleged that he requested to see a neurologist but was denied his request. He explained that when he was released on May 2, 2006, he went to his primary care physician who told him to go the DRMC to get another emergency room evaluation before being referred to a neurologist. After the emergency room evaluation, but before he could be scheduled for a neurologist appointment, he was recommitted to the CCP on new charges. He requested the CCP to pay his medical costs, which should include a visit to a neurologist and some type of aftercare/treatment program (doc. no. 53-8, pp. 6-7). On August 7, 2006, Judge Ammerman denied Plaintiff's motion as seeking reimbursement for medical expenses in an improper forum, *i.e.*, through Plaintiff's criminal prosecution (doc. no. 53-5, p. 44).

On September 13, 2006, Plaintiff was seen again by the medical department where his Neurontin medication was increased to 300 mg. On November 16, 2006, Plaintiff was transferred to the

Pennsylvania Correctional Institution at Albion (doc. no. 53-5, p. 50).

Plaintiff's medical claims centers on his complaint that he did not receive an MRI or neurology consult. In evaluating his claim, the test is whether the challenged conditions amount to punishment under the Due Process Clause. Absent a showing of express intent to punish, the determination will normally turn on whether the conditions have an alternative purpose and whether the conditions appear excessive in relation to that purpose. Hubbard, 399 F.3d at 158. This inquiry considers the totality of the circumstances within a given institution. *Id*. at 160.

This Court finds that there was no denial of medical treatment that was so excessive in relation to any stated purpose of jail security and administration, which would infer that such denial was intended as punishment. Plaintiff has been provided medical care for his requested needs, although the treatment has not met his personal satisfaction. Specifically, Plaintiff has not demonstrated any serious medical need that has been purposefully or willfully ignored by defendant. None of his medical records suggest the need for an MRI or a neurology consult. Even his primary care physician required Plaintiff to undergo another CT scan before he would approve him to see a neurologist. And, nowhere is there any evidence that his primary care physician would

have approved him to see a neurologist based on his May 4, 2006 CT scan.

At best, Plaintiff may be alleging a state law tort claim of medical negligence, which is not cognizable in a § 1983 action. In this regard, the Supreme Court repeatedly has made it patently clear that negligence claims cannot support liability under section 1983. *See, e.g.,* County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1720 (1998) (motorcyclist's death that resulted from high-speed police chase was not actionable under 42 U.S.C. § 1983); Collins v. City of Harker Heights, Texas, 503 U.S. 115 (1992) (failure to provide safe work environment did not state a section 1983 claim); DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989) (the state had no constitutional duty to protect a child against beatings by his father even though the state was aware of the father's abuse and had at one time taken custody of the child); Davidson v. Cannon, 474 U.S. 344, 348 (1986) (clarifying that lack of due care by prison officials does not state a claim under either the substantive or the procedural aspects of the Due Process Clause); Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994) (mere negligence does not satisfy the deliberate indifference standard; a plaintiff must demonstrate something approaching a total unconcern for his welfare in the face

of serious risks, or a conscious, culpable refusal to prevent harm) (internal quotation omitted).[1]

"To survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." McCabe v. Ernst & Young, LLP., 494 F.3d 418, 436-37 (3d Cir. 2007) (citations omitted). Here, Plaintiff's medical records show that his emergency room records from DRMC were faxed to the CCP medical department on July 19, 2006 (doc. no. 53-4, p. 49). These records show that Plaintiff was suffering from post-concussion syndrome (doc. no. 53-4, p. 51). Significantly, nowhere in these records does it show that a neurology consult or MRI were indicated for Plaintiff's condition. Thus, no reasonable juror could conclude that the medical care received by Plaintiff amounted to "punishment" in violation of the Due Process Clause of the Fourteenth Amendment. Consequently, Defendants are entitled to

---

1.    See also Christopher v. Buss, 384 F.3d 879, 882 (7th Cir. 2004) (holding that, even if defendants knew about the allegedly hazardous field condition and purposefully ignored it, the plaintiff would not be entitled to relief as his allegations, at most, asserted negligence); Rocheleau v. Cumberland County Sheriff's Dept., 733 F. Supp. 140 (D. Me. 1990) (holding that inmate's complaint that he sustained injuries when he tripped on open floor drain, hit jail wall and broke his nose failed to state § 1983 claim; complaint alleged nothing more than mere negligence on part of prison officials and did not allege either deliberate or conscious indifference).

judgment as a matter of law with respect to Plaintiff's claims concerning his request for an MRI and a neurology consult.

    2.    <u>Failure to Protect</u>

        Plaintiff further complains that Defendants are liable for failing to protect him from attack from inmate Taylor. Plaintiff is not entitled to relief in this claim because his own documents do not show that he informed Defendants that inmate Taylor posed any specific risk or that he and Taylor had had any altercation in the past.  While Plaintiff's records show that he wanted a cell change, he never mentioned Taylor.   Rather, he generally stated that he was having a hard time dealing with "certain" inmates and that "some of these people are getting on my nerves" (doc. no. 53-8, p. 3).  Moreover, in none of his written requests did Plaintiff notify anyone that Taylor had threatened him.   Taylor attacked Plaintiff only after he and Taylor argued about the TV.   Nothing in the record suggests that Defendants should have been aware that Taylor posed a significant risk.   There simply is no record evidence for a factfinder to conclude that Defendants were aware, or should have been aware, of any intolerable threat to Plaintiff's safety.

        A different situation was presented in <u>Davidson v. Cannon</u>, 474 U.S. 344 (1986), where the inmate had received a threat from another inmate and then communicated the threat to prison officials.  The defendant officials deemed the threat non-serious

and did not take any action; two days later the plaintiff was attacked and injured by the cited inmate. The District Court determined that the inmate had failed to establish an Eighth Amendment claim because there had been no deliberate indifference and the incident related to a single attack. *Id.*, 474 U.S. at 346. However, the inmate prevailed under the Due Process Clause pursuant to his claim that prison officials negligently had failed to protect him from attack. *Id.* Ultimately, the United States Supreme Court reversed this determination and held that, even though the officials' lack of due care had led to the plaintiff's injuries, such "negligence" could not be the basis of a constitutional violation. *Id.* at 347-348.

Again, no factfinder could find on this record that Defendants' actions in failing to remove Plaintiff from the same block Taylor was in was "punishment" for purposes of a due process violation. Consequently, Defendants' Motion for Summary Judgment should be granted as to Plaintiff's failure to protect claim.

**E. Deprivation of Property Interest- Procedural due process**

Plaintiff's final claim concerns the deduction of his medical expenses from his inmate account. In this regard, the record shows that Warden Lombardo assessed Plaintiff half of his medical costs after reviewing the videotape of the incident in question. Presumably, Warden Lombardo assessed these costs

pursuant to the authority set forth in the CCP handbook, which provides as follows.

INJURY CAUSED TO INMATES OR OTHERS

Inmates who inflict injury upon themselves, other inmates, staff members of the jail, or civilians (while in jail) will be held financially responsible for the full cost of medical care for the injured person(s), and any loss of wages incurred as a result of the injury.

All reports of injuries caused by an inmate will be forwarded to the Warden's Office (this specifically includes the record of inmate disciplinary hearings). Senior staff members at their next scheduled meeting will review reports and determine if an inmate will be held financially responsible.

Inmates found not guilty of charges related to an injury (assault, fighting, etc.) at an inmate disciplinary hearing will not be held financially responsible. When it is decided that an inmate will be held financially responsible for an injury, the inmate will be notified of this fact in writing.

Doc. no. 58-2, p.2.

An inmate has a property interest in the money in his inmate account, which he cannot be deprived of without procedural due process. <u>Gillihan v. Shillinger</u>, 872 F.2d 935 (10th Cir. 1989); <u>Quick v. Jones</u>, 754 F.2d 1521, 1523 (9th Cir. 1985); <u>Reynolds v. Wagner</u>, 128 F.3d 166 (3d Cir. 1997); <u>Holloway v. Lehman</u>, 671 A.2d 1179 (Pa. Commw. 1996). *Cf*. <u>Artway v. Scheidemantel</u>, 671 F. Supp. 330 (D.N.J. 1987) (procedures whereby

amount of restitution were determined without hearing were constitutionally defective).

In Holloway v. Lehman, prisoners who were found guilty of destroying property complained that subsequent administrative assessment of damages against them and the deduction of money from their accounts constituted a deprivation of property without due process of law because they were not first afforded an opportunity to challenge the assessment of damages. The Court agreed and stated that before an assessment of damages could occur, an inmate must be provided with a hearing that comports with administrative agency law. Holloway, 671 A.2d at 1182. Moreover, the Court held that the DOC grievance procedure was not adequate to provide the minimum due process requirements. Id. at 1181.

Defendants in this action assert that the Holloway requirement to hold a transcribed hearing does not control in this action because the defendants in Holloway were employees of a state agency and, thus, were governed under the Administrative Agency Law, 2 Pa. Cons. Stat. § 504. While the defendants in this action may not be required to meet the requirements of 2 Pa. Cons. Stat. § 504, Defendants have not shown, as a matter of law, that Plaintiff received the process he was due with respect to the decision to deduct moneys from his account.

In Reynolds v. Wagner, 128 F.3d 166 (3d Cir. 1997), inmates in the Berks County Jail complained that the Berks County

Prison fee for medical services program violated the Fourteenth Amendment's Due Process Clause by taking funds held in inmate accounts without due process of law.  In examining this issue, the Court held that the procedures used to deduct the medical fees did not violate due process for several important reasons.  First, inmates had specific notice that they would be charged for medical expenses.  Specifically, the exact fees were set forth in the Berks County Inmate Handbook as follows:  $3.00 fee for a medical evaluation (sick call) by nursing staff; no charge for prescription medication; no charge for over the counter drugs if deemed necessary for treatment; no fee for sick call if referred to the Doctor by the nursing staff; $5.00 fee without a referral.  Second, the nurse who imposed the fee was required to inform the inmate of possible channels to challenge the fee assessment.  In this regard, an aggrieved inmate could first file an inmate communication form which the medical department reviewed.  Upon receiving an unfavorable response to a communication, an inmate could send a written grievance to senior staff concerning the fee assessment. The grievance was decided by a majority vote of a committee of senior staff consisting of the Warden, Assistant Warden, the Deputy Warden for Treatment Services, the Deputy Warden for Custody Services and the Director of Administrative Services and is appealable to the Berks County Prison Board.  On these facts, the Court concluded that due process had been met because inmates were

informed about the fee policy and adequate procedures existed to challenge disputed fees.  Moreover, the Court noted that the deduction was a fixed, non-punitive assessment, which limited the danger of prison authorities' abusing the power to make unauthorized deductions.  *Id*. at 180.  Finally, the Court noted that, in exchange for the fees, the inmates received the benefit of health care, the value of which undoubtedly exceeded the modest fee assessed.  *Id*.

A far different situation is presented in the facts at bar.  Here, Plaintiff had no specific notice that he would be held responsible for his own medical costs.  The handbook provides only that inmates who intentionally inflict injury upon themselves or other inmates will be financially responsible.  Plaintiff did not inflict injury upon himself or another inmate; he was charged from behind by inmate Taylor who busted his head open and left him unconscious.  The fact he may have argued with Taylor about the TV prior to the incident does not lead to any reasonable conclusion that Plaintiff inflicted any injury to anyone.  Thus, there was no notice to Plaintiff in this case.  Second, the handbook indicates that the reports of injuries caused by an inmate will be forwarded to the warden, specifically including the record of inmate disciplinary hearings.  Moreover, inmates found not guilty of charges may not be held financially responsible.  By negative implication, this language appears to assume that an inmate will be

charged with a misconduct before he can be held financially responsible. Plaintiff was not charged with any misconduct with respect to the incident on April 11,2006. Taylor, on the other hand, was charged and found guilty of assaulting Plaintiff.

Third, unlike the plaintiffs in <u>Reynolds</u>, Plaintiff had no notice of the specific fees involved or the reasonableness of such fees. Rather, he simply received a letter from the warden informing him that he was responsible for 50 percent of his medical costs. He received no notice of the fees such that he could assess the reasonableness thereof. Fourth, he received no meaningful review of the Warden's decision. In <u>Reynolds</u>, a nurse calculated the fees and this decision was reviewable by the medical department and further by senior staff. Here, there was no one at the jail more senior than the warden to review his decision. The response to Plaintiff's grievance in this matter merely stated: "You were given a letter from Warden Lombardo dated May 2, 2006, that you would be responsible for paying half of your hospital bill." Doc. No. 53-5, p.22. This indicates that there was no review of the warden's decision or the review of the costs involved. In short, there was no review at all. Finally, there is no indication in the Board's minutes that this issue ever was discussed. The only mention is the fact of the April 11, 2006 incident and the adequacy of his medical treatment. The imposition of the costs to Plaintiff

is not noted.  Thus, there was no review by the prison board as to this decision or as to the reasonableness of the costs.

The discussion above shows that Defendants have not demonstrated that they are entitled to summary judgment as to Plaintiff's due process claim regarding the imposition of fifty percent of his medical costs stemming from the April 11, 2006 incident where he was assaulted by fellow inmate Taylor and received fifty staples and four sutures to close the lacerations on his head.  Thus, this claim remains against Warden Lombardo and all remaining Board member Defendants.[2]

Finally, because it does not appear that Defendants Warmuth and McCloskey were involved the decision to impose Plaintiff's medical costs, these defendants should be dismissed from this action.

## III.    **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants R. Read, Shaw, McClusick, Hawkins, C. Read, Lombardo, McCloskey, Wormuth, Ammerman, McCracken, and Lytle (doc. no. 52) be granted as to all claims **EXCEPT** as to Plaintiff's claims regarding

_____

2.  The Court is troubled by the Defendants' continued assertion of judicial immunity as to Defendant Ammerman.  The Court made it abundantly clear that Defendant Ammerman is not entitled to judicial immunity as Plaintiff is suing him only as his actions as a Board member and not in his judicial capacity for denying Plaintiff's July 27, 2006 petition.  *See* 8/9/07 R&R, n.2. Defendants continued insistence on raising this meritless argument is a waste of this court's judicial resources.

the deduction of medical fees from his inmate account; because it does not appear that Defendants Warmuth and McCloskey were involved the decision to impose Plaintiff's medical costs, these defendants should be dismissed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated:     August 21, 2008          _____

                                    Lisa Pupo Lenihan
                                    U.S. Magistrate Judge

cc:        Kim R. Gibson
           United States District Judge

           Lamont J. Marshall, GV-9769
           SCI Graterford
           P.O. Box 244
           Graterford, PA 19426